**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 20-11646 |
| | § | |
|     TIDEWATER LANDFILL LLC, | § | CHAPTER 7 |
| | § | |
|     DEBTOR. | § | SECTION A |
| | § | |
| LOUISIANA DEPARTMENT OF ENVIRONMENTAL QUALITY, | § | |
| | § | |
|     PLAINTIFF, | § | |
| | § | |
| VERSUS | § | |
| | § | |
| TIDEWATER LANDFILL LLC, ENVIRONMENTAL OPERATORS LLC, THE LOUISIANA FRUIT COMPANY, USI GULF COAST INC., THE GRAY INSURANCE COMPANY, AIG INSURANCE COMPANY/AMERICAN INTERNATIONAL SPECIALTY LINES INSURANCE COMPANY, IRONSHORE SPECIALTY INSURANCE COMPANY, ASPEN SPECIALTY INSURANCE COMPANY, LANDMARK AMERICAN INSURANCE COMPANY, PAUL GUIDRY, KEVIN GUIDRY, INDUSTRIAL MANAGEMENT GROUP LLC, AGPG LLC, WASTE DISPOSAL SERVICES OF SOUTH LOUISIANA LLC, GULF COAST WATER & BEVERAGE LLC, INDUSTRIAL SERVICES GROUP LLC, PERSONAL PROVIDERS LLC, DIESEL MAINTENANCE LLC, PINTAIL EQUIPMENT RENTAL LLC, JJJ INSURANCE COMPANY, AND KKK INSURANCE COMPANY, | § | ADV. NO. 24-1011 |
| | § | |
|     DEFENDANTS. | § | |

### MEMORANDUM OPINION AND ORDER DENYING MOTION TO REMAND AND DENYING MOTION TO STRIKE

Before the Court is the *Joint Motion To Remand on Behalf of Ironshore Specialty Insurance Company, AIG Specialty Insurance Company, Aspen Specialty Insurance Company, the Gray Insurance Company and Landmark American Insurance Company* and memorandum in support (the "Motion To Remand"), [ECF Doc. 3], filed by Ironshore Specialty Insurance Company, AIG Specialty Insurance Company, Aspen Specialty Insurance Company, The Gray Insurance Company, and Landmark American Insurance Company (collectively, the "Insurer Movants") and the oppositions to the Motion To Remand filed by (i) the Louisiana Department of Environmental Quality ("LDEQ"), [ECF Doc. 4]; (ii) The Louisiana Fruit Company ("Louisiana Fruit"), [ECF Doc. 5]; (iii) Paul Guidry, Kevin Guidry, Industrial Management Group LLC, AGPG LLC, Waste Disposal Services of South Louisiana LLC, Gulf Coast Water & Beverage LLC, Industrial Services, Group LLC, Personnel Providers LLC, Diesel Maintenance LLC, and Pintail Equipment Rental LLC (collectively, the "Alter-Ego Defendants"), [ECF Doc. 6]; and (iv) the chapter 7 trustees (the "Trustees") appointed in bankruptcy cases for two of the Defendants pending in this district (*In re Tidewater Landfill, LLC*, No. 20-11646 and *In re Environmental Operators, LLC*, No. 20-11648), [ECF Doc. 7]. The Insurer Movants filed a reply brief in support of their Motion To Remand. [ECF Doc. 8].

The Insurer Movants also filed a *Motion To Strike/Statement in Opposition to Notice of Automatic Stay* (the "Motion To Strike"), [ECF Doc. 10], which is opposed by the Alter-Ego Defendants, [ECF Doc. 11]. The Insurer Movants also filed a reply brief in support of that motion. [ECF Doc. 12]. For the following reasons, the Court **DENIES** both the Motion To Remand and the Motion To Strike.

2

## PROCEDURAL POSTURE

On October 12, 2018, LDEQ filed a *Petition on Mandatory Injunction To Abate a Continuing Nuisance* (the "LDEQ Action") in Louisiana state court against Tidewater Landfill LLC ("Tidewater"), Environmental Operators LLC ("Envtl. Operators"), Louisiana Fruit, USI Gulf Coast Inc., and the Insurer Movants, alleging mismanagement and disregard for applicable environmental statutes, regulations, and permits, and seeking to close a landfill operated by Tidewater and Envtl. Operators on property owned by Louisiana Fruit. [ECF Doc. 2]. LDEQ amended its original Petition on May 2, 2019, to include further allegations in support of an injunction. *See id.*[1] On August 9, 2019, LDEQ amended its Petition a second time to add Aspen Specialty Insurance Company as a defendant. *See id.* In October 2019, LDEQ amended its petition a third time to add Landmark American Insurance Company as a defendant. *See id.*

On September 22, 2020, Tidewater and Envtl. Operators filed petitions for bankruptcy relief under chapter 7 of the Bankruptcy Code. [No. 20-11646, ECF Doc. 1; No. 20-11648, ECF Doc. 1]. Pursuant to 11 U.S.C. § 362(a), those bankruptcy filings stayed the LDEQ Action against those defendants. On or about October 27, 2020, the Trustees appointed in each of those cases filed notices declaring that no assets were available for distribution to creditors. In December 2020, Louisiana Fruit and LDEQ filed motions for relief from the automatic stay imposed by § 362(a) to allow the LDEQ Action to proceed against Tidewater and Envtl. Operators along with the other non-debtor defendants. [No. 20-11646, ECF Docs. 35 & 39; No. 20-11648, ECF Docs. 28 & 32]. The Court granted those motions in January 2021 in large part because the Trustees had declared that the estates contained no assets to liquidate for distribution

---

[1] In May 2019, Louisiana Fruit filed an Answer to the amended Original Petition, asserting a reconventional demand against LDEQ and cross-claims against Tidewater and Envtl. Operators. [No. 20-11646, ECF Doc. 35-2; No. 20-11648, ECF Doc. 28-2].

to creditors and thus, no prejudice to creditors would result if the litigation were allowed to proceed. [No. 20-11646, ECF Docs. 43 & 44; No. 20-11648, ECF Docs. 36 & 37].

In January 2022, the Trustees filed notices to creditors, indicating that the Tidewater and Envtl. Operators estates held assets in the form of insurance proceeds and instructing creditors to file proofs of claim. [No. 20-11646, ECF Doc. 59; No. 20-11648, ECF Doc. 50]. LDEQ and Louisiana Fruit filed proofs of claim in both cases, asserting multimillion-dollar claims against the debtors, citing the same bases as alleged in the LDEQ Action. [No. 20-11646, Claims 1 & 2; No. 20-11648, Claims 2 & 3].

On September 19, 2023, the Louisiana state court granted leave to LDEQ to amend its Petition a fourth time (the "Fourth Amended Petition"). The Fourth Amended Petition added the Alter-Ego Defendants, asserting state-law single-business-enterprise and alter-ego claims. [ECF Doc. 2]. The Alter-Ego Defendants removed the LDEQ Action to the United States District Court for the Eastern District of Louisiana, which referred the case to this Court for all purposes, with instructions to hear and decide the pending Motion To Remand and the Motion To Strike. [ECF Doc. 1].

Although the Louisiana state court has scheduled a trial date for January 2025, the case is not close to trial-ready. The parties existing prior to the Fourth Amended Petition have engaged in some motion practice and exchanged written discovery; however, the Alter-Ego Defendants have not filed Answers, no discovery has been exchanged with the Alter-Ego Defendants, and no depositions have been taken among any of the parties. [ECF Docs. 3, 5].

## DISCUSSION

The Alter-Ego Defendants removed the LDEQ Action to the District Court under 28 U.S.C. §§ 1334 and 1452(a) and Rule 9027 of the Federal Rules of Bankruptcy Procedure. With

4

some exceptions not applicable here, § 1452 allows a party to remove "any claim or cause of action in a civil action . . . to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title." 28 U.S.C. § 1452(a). The Insurer Movants seek remand of the LDEQ Action, asserting that the LDEQ Action "has no connection to and/or impact on [Tidewater's and Envtl. Operators'] Bankruptcy Cases, such that the non-debtor Removing Defendants have no basis to invoke the jurisdiction of this Court." Mem. in Support, ¶ 2. The Insurer Movants also assert that, even if this Court can exercise jurisdiction over the LDEQ Action, it should exercise its discretion and abstain from hearing the case pursuant to 28 U.S.C. § 1334(c)(1) or equitably remand the case pursuant to 28 U.S.C. § 1452(b).

    A.    **Removal of the LDEQ Action Was Proper Because It Is "Related To" Tidewater's and Envtl. Operators' Bankruptcy Cases and Thus This Court Has Federal Subject-Matter Jurisdiction Over the Action.**

Jurisdiction is assessed based on the facts as they existed at the time of removal. *See Louisiana v. Am. Nat'l Prop. & Cas. Co.*, 746 F.3d 633, 639 (5th Cir. 2014). "Because federal courts have limited jurisdiction, the removal statute is strictly construed, and any ambiguities are construed against removal and in favor of remand." *Alexander v. Travelers Indem. Co.*, 625 F. Supp. 3d 512, 517 (E.D. La. 2022) (citing *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002)). "The party seeking removal has the burden of establishing that federal subject-matter jurisdiction exists and that removal was proper." *Id.* (citing *Manguno*, 276 F.3d at 723).

"For purposes of determining whether removal was proper in the first instance . . . the party seeking removal need only show that, under the minimum requirements of 'related-to' jurisdiction, 'the outcome of the proceeding could conceivably have any effect on the estate being administered in bankruptcy . . . [or] the outcome could alter the debtor's rights, liabilities,

5

options, or freedom of action . . . and which in any way impacts upon the handling and administration of the bankruptcy estate." *Hadi v. McCune Wright Arevalo LLP*, No. 18-05104, 2018 WL 6675622, at *4 (C.D. Cal. Dec. 17, 2018) (quoting *Fietz v. Great W. Sav. (In re Fietz)*, 852 F.2d 455, 457 (9th Cir. 1988)); *see also Wood v. Wood (In re Wood)*, 825 F.2d 90, 93 (5th Cir. 1987) (holding that a matter is "related to" a bankruptcy case as that phrase is used in 28 U.S.C. § 1334(b) if "the outcome of that proceeding could *conceivably* have any effect on the estate being administered in bankruptcy"). As explained by the Eleventh Circuit:

> The . . . test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of the proceeding could conceivably have an effect on the estate being administered in bankruptcy. The proceeding need not necessarily be against the debtor or the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.

*Lawrence v. Goldberg*, 573 F.3d 1265, 1270–71 (11th Cir. 2009) (quoting *Miller v. Kemira, Inc. (In re Lemco Gypsum, Inc.)*, 910 F.2d 784, 788 (11th Cir. 1990)). The policy reasoning behind "related to" jurisdiction is simple:

> [Section 1334's] reference to cases related to bankruptcy cases is primarily intended to encompass tort, contract, and other legal claims by and against the debtor, claims that, were it not for the bankruptcy, would be ordinary stand-alone lawsuits between the debtor and others but that section 1334(b) allows to be forced into bankruptcy court so that all claims by and against the debtor can be determined in the same forum. *A secondary purpose is to force into the bankruptcy court suits to which the debtor need not be a party but which may affect the amount of property in the bankrupt estate.*

*Feld v. Zale Corp. (In re Zale Corp.)*, 62 F.3d 746, 752 (5th Cir. 1995) (citation omitted).

The LDEQ Action asserts claims against Tidewater and Envtl. Operators, both debtors with cases pending in this Court, as well as several non-debtor defendants. Although at one time, the LDEQ Action may not have had any "conceivable" effect on the bankruptcy estates—indeed, there were no assets to administer for the benefit of creditors. But at the time of removal,

6

the status of Tidewater's and Envtl. Operators' bankruptcy cases had changed: Amended Schedules for the debtors revealed assets to be administered and the Trustees filed notices to creditors of the need to file proofs of claim against the estates for possible distributions by the estates. LDEQ did just that and filed proofs of claim against both estates on the bases of the same claims contained in the LDEQ Action.

For the reasons discussed below, *see* discussion *infra* Subpart B, the Court finds that the claims asserted in the LDEQ Action are more than just "related to" the bankruptcy cases of Tidewater and Envtl. Operators. But at a minimum, the LDEQ Action is indeed "related to" the debtors' bankruptcy cases, as the resolution of the LDEQ Action will reveal the portion of the judgment, if any, that the estates will bear vis-à-vis other non-debtor defendants. *See, e.g.*, *In re Wood*, 825 F.2d at 94 ("[W]hen the plaintiff alleges liability resulting from the joint conduct of the debtor and non-debtor defendants, bankruptcy jurisdiction exists over all claims under section 1334."). Therefore, the Court finds that the Alter-Ego Defendants have made a sufficient showing that federal subject-matter jurisdiction exists and removal was proper under 28 U.S.C. § 1452(a).

**B. The LDEQ Action Is a "Core Proceeding" That This Court May Hear and Determine on a Final Basis.**

Section 1334 grants district courts "original and exclusive jurisdiction" over all cases "under title 11," that is, the Bankruptcy Code. 28 U.S.C. § 1334(a). Under that section, the district courts also enjoy "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). "The distinction between cases that 'arise under' or 'arise in' Title 11, on the one hand, and cases that are 'related to' Title 11, on the other hand, 'has significance as a jurisdictional consideration.'"

7

*Hadi*, 2018 WL 6675622, at *3 (quoting *In re Harris Pine Mills*, 44 F.3d 1431, 1435 (9th Cir. 1995)).

"The bankruptcy courts in turn draw their jurisdiction from the district courts under 28 U.S.C. § 157(a)." *Foster v. Aurzada (In re Foster)*, No. 22-10310, 2023 WL 20872, at *2 (5th Cir. Jan. 3, 2023) (internal quotations and citation omitted). "A bankruptcy court's statutory authority derives from 28 U.S.C. § 157(b)(1), which designates certain matters as 'core proceedings' and authorizes a bankruptcy court to determine the matters and enter final judgments." *Galaz v. Katona (In re Galaz)*, 841 F.3d 316, 323 (5th Cir. 2016) (citation omitted). Section 157(b)(2) provides a non-exclusive list of proceedings that are considered to be "core proceedings," including "allowance or disallowance of claims against the estate . . . ." 28 U.S.C. § 157(b)(2)(B). To distinguish "core" from "non-core" proceedings, the Fifth Circuit has explained:

> Congress used the phrase "arising under title 11" to describe those proceedings that involve a cause of action created or determined by a statutory provision of title 11. Apparently, the phrase was taken from 28 U.S.C. § 1331, conferring federal jurisdiction in which it carries a similar and well-accepted meaning. The meaning of "arising in" proceedings is less clear, but seems to be a reference to those "administrative" matters that arise only in bankruptcy cases. In other words, "arising in" proceedings are those that are not based on any right expressly created by title 11, but nevertheless, would have no existence outside of the bankruptcy.
>
> As defined above, the phrases "arising under" and "arising in" are helpful indicators of the meaning of core proceedings. If the proceeding involves a right created by the federal bankruptcy law, it is a core proceeding; for example, an action by the trustee to avoid a preference. If the proceeding is one that would arise only in bankruptcy, it is also a core proceedings; for example, the filing of a proof of claim or an objection to the discharge of a particular debt. If the proceeding does not invoke a substantive right created by the federal bankruptcy law and is one that could exist outside of bankruptcy it is not a core proceeding; it may be related to the bankruptcy because of its potential effect, but under section 157(c)(1) it is an "otherwise related" or non-core proceeding.

*WRT Creditors Liquidation Tr. v. C.I.B.C. Oppenheimer Corp.*, 75 F. Supp. 2d 596, 607 (S.D. Tex. 1999) (quoting *In re Wood*, 825 F.2d at 96–97).

This Court is responsible for determining "whether a proceeding is a core proceeding under this subsection or is a proceeding that is otherwise related to a case under title 11." 28 U.S.C. § 157(b)(3). "A determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law." *Id.*; *see also Southmark Corp. v. Coopers & Lybrand (In re Southmark Corp.)*, 163 F.3d 925, 931 (5th Cir. 1999) ("To begin with, the state law origin of [plaintiff's] claims is not dispositive . . . . That [plaintiff's] claims against the court-appointed accountant for its examiner arose under state law does not prevent them from involving core jurisdiction.").

The Insurer Movants deny that this Court has any jurisdiction over the LDEQ Action because it "concern[s] state law claims [and] involve[s] many more defendants which are non-debtors." Mem. in Support, ¶ 20. For the reasons stated above, this Court, at the least, enjoys "related-to" jurisdiction over the LDEQ Action. But this Court further finds that the removed LDEQ Action now constitutes a "core proceeding" that the Court may hear and determine on a final basis. After the Trustees notified creditors that the Tidewater and Envtl. Operators estates held assets to be administered, LDEQ filed proofs of claim in each of those cases, asserting the same claims against the debtors as those it asserted in its state court action. By doing so, LDEQ "trigger[ed] the process of 'allowance and disallowance of claims,' and, therefore, . . . subject[ed] itself to the bankruptcy court's equitable jurisdiction in proceedings affecting that claim." *Bankr. Servs., Inc. v. Ernst & Young (In re CBI Holding Co.)*, 529 F.3d 432, 466 (2d Cir. 2008) (citing *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 58 (1989)). "Allowance or disallowance of claims against the estate" is an enumerated "core proceeding" upon which

9

bankruptcy courts may hear and determine on a final basis, and courts have consistently found that the filing of a proof of claim which asserts the same claims raised against a debtor in a prepetition state court action transforms the state court action into a core proceeding. *See, e.g., S.G. Phillips Constructors, Inc. v. City of Burlington (In re S.G. Phillips Constructors, Inc.)*, 45 F.3d 702, 705 (2d Cir. 1995); *In re Wood*, 825 F.2d at 90, 97; *Davis v. Life Inv. Ins. Co. of Am.*, 282 B.R. 186, 193 (S.D. Miss. 2002); *In re Efficient Solutions, Inc.*, No. 00-3071, 2000 WL 1876356, at *5 (E.D. La. Dec. 20, 2000); *Maintainco, Inc. v. Mitsubishi Caterpillar Forklift Am. Inc. (In re Mid-Atlantic Handling Sys., LLC)*, 304 B.R. 111, 123 (Bankr. D.N.J. 2003); *In re Best Reception Sys. Inc.*, 220 B.R. 932, 944 (Bankr. E.D. Tenn. 1998); *Steinman v. Spencer (In re Argus Grp. 1700, Inc.)*, 206 B.R. 737, 747–48 (Bankr. E.D. Pa. 1996).

For these reasons, this Court may exercise subject-matter jurisdiction over the entire LDEQ Action and enter final judgment on all claims, counterclaims, and cross-claims asserted therein.[2]

---

[2]    Louisiana Fruit has filed a reconventional demand against LDEQ and cross-claims against debtors Tidewater and Envtl. Operators. Tidewater also filed proofs of claim in each of the debtors' bankruptcy cases on the same bases as those asserted in its cross-claims. For the reasons stated above, Louisiana Fruit's cross-claims are "core proceedings" that this Court may hear and determine on a final basis. Its reconventional demand against LDEQ, however, is not a "core proceeding" as it consists of state-law claims between nondebtors which do not involve substantive rights conferred by the Bankruptcy Code or proceedings that could only arise in a bankruptcy case. A bankruptcy court has "related-to" jurisdiction to hear "non-core" proceedings, but may not decide those matters on a final basis. Rather, the bankruptcy court must submit findings of fact and conclusions of law to the district court for de novo review, *see* 28 U.S.C. § 157(c)(1), unless the parties consent to the bankruptcy court's authority to render final judgment, *see Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665, 670–71 (2015). Consent to a bankruptcy court's authority to render a final judgment in a matter can be express or implied. *See id.* at 683–84.

Here, both LDEQ and Louisiana Fruit oppose the Insurer Movants' Motion To Remand, [ECF Docs. 4 & 5], and both have filed Notices into the record consenting to this Court's jurisdiction to hear and decide all claims on a final basis, [ECF Docs. 21 & 24].

### C. This Court Declines To Exercise Its Discretion To Abstain Under 28 U.S.C. § 1334(c)(1) or Equitably Remand Under 28 U.S.C. § 1452(b).

Alternatively, the Insurer Movants ask this Court to exercise its discretion to abstain from hearing the LDEQ Action in favor of allowing it to proceed in state court. Section 1334 of Title 28 of the United States Code provides an avenue for such "permissive" abstention:

> Except with respect to a case under chapter 15 of title 11, nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

28 U.S.C. § 1334(c)(1). "Abstention is an extraordinary and narrow exception to the duty of a federal court to exercise the jurisdiction conferred and adjudicate a controversy properly before it." *Foster v. Holder (In re Foster)*, Adv. No. 19-04131, 2020 WL 612915, at *18 (Bankr. N.D. Tex. Oct. 15, 2020), *aff'd*, *Foster v. Aurzada (In re Foster)*, No. 22-10310, 2023 WL 20872 (5th Cir. Jan. 3, 2023). Indeed, "[a]bdication of the obligation to decide cases can be justified under this doctrine only in the exceptional circumstances where the order to the parties to repair to the state court would clearly serve an important countervailing interest." *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976) (citation omitted). "In determining whether permissive abstention and equitable remand are appropriate, the analysis starts with the presumption in favor of exercising jurisdiction over [the] lawsuit and not abstaining in favor of the state court, with the balance heavily weighted in favor of the exercise of jurisdiction." *Doe v. Roman Catholic Church of Archdiocese of New Orleans*, 588 F. Supp. 3d 698, 716–17 (E.D. La. 2022) (internal quotations and citations omitted).[3]

---

[3] Equitable remand of bankruptcy matters is provided for under 28 U.S.C. § 1452(b), which states that "[t]he court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground." "[T]he factors governing permissive abstention and equitable remand are nearly identical." *Doe v. Roman Catholic Church of Archdiocese of New Orleans*, 588 F. Supp. 3d 698, 716 (E.D. La. 2022) (citation omitted). "Therefore, the Court need not undertake separate analyses

11

Pursuant to the Supreme Court's instruction, permissive abstention is confined to three general categories:

> (1) cases presenting a federal constitutional issue which might be mooted or presented in a different posture by a state court determination of pertinent state law; (2) where there are difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case at bar; and (3) where, absent bad faith, harassment, or a patently invalid state statute, federal jurisdiction has been invoked for the purpose of restraining state criminal proceedings.

*Houston Baseball Partners LLC v. Comcast Corp. (In re Hous. Reg'l Sports Network, L.P.)*, 514 B.R. 211, 217–18 (Bankr. S.D. Tex. 2014) (citing *Colo. River Water Conservation Dist.*, 424 U.S. at 814–16). Courts, however, have distinguished *Colorado River* abstention from statutory abstention under § 1334(c), finding that bankruptcy courts enjoy broad discretion on whether or not to abstain from adjudicating claims. *See, e.g.*, *Bricker v. Martin*, 348 B.R. 28, 32–33 (W.D. Pa. 2006); *Special Value Continuation Partners, L.P. v. Jones*, Adv. No. 11-3304, 2011 WL 5593058, at *8 (Bankr. S.D. Tex. Nov. 10, 2011); *Republic Reader's Serv., Inc. v. Magazine Serv. Bureau, Inc. (In re Republic Reader's Serv., Inc.)*, 81 B.R. 422, 424–25 (Bankr. S.D. Tex. 1987). As explained by the *Houston Regional Sports Network* court:

> The proposition that bankruptcy court have broad discretion on whether to abstain comes from both the plain language of the statute and the Fifth Circuit's decision in *Wood v. Wood* [825 F.2d at 93]. Section 1334(c)(1) is a broadly worded statute allowing federal courts to decline to exercise jurisdiction "in the interest of justice, or in the interest of comity with State courts or respect for State law." In *Wood*, the Fifth Circuit noted that the discretionary abstention provision of § 1334(c)(1) helps prevent the broad language of § 1334(b) from bringing into federal court matters which should be left to state court to decide.

514 B.R. at 218 (internal citations omitted).

Courts have identified several factors that may be considered when determining whether to postpone the exercise of its jurisdiction:

---

to determine whether permissive abstention or equitable remand is appropriate; the doctrines are properly addressed with one analysis." *Id*.

(1) the effect or lack thereof on the efficient administration of the estate if the court decides to abstain;

(2) the extent to which state law issues predominate over bankruptcy issues;

(3) the difficult or unsettled nature of applicable law;

(4) the presence of a related proceeding commenced in state court or another nonbankruptcy proceeding;

(5) any jurisdictional basis, if any, other than 28 U.S.C. § 1334;

(6) the degree of relatedness or remoteness of the proceeding to the bankruptcy case;

(7) the substance rather than the form of an asserted core proceeding;

(8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court;

(9) the burden of the proceeding on the court's docket;

(10) the likelihood that the commencement of the proceeding in the court involves forum shopping by one of the parties;

(11) the existence of a right to a jury trial;

(12) the presence in the proceeding of non-debtor parties;

(13) comity; and

(14) the possibility of prejudice to other parties in the action.

*In re Foster*, 2020 WL 6127915, at *18 (citing cases); *see also Doe v. Archdiocese of New Orleans Indemnity, Inc.*, No. 20-1338, 2020 WL 4593443, at *4 (E.D. La. Aug. 11, 2020). In the end, "[w]hether permissive abstention is appropriate in a given case will, of necessity, be driven by equitable considerations germane to that case." *Official Comm. of Unsecured Creditors of Schlotzsky's, Inc. v. Grant Thornton, L.L.P. (In re Schlotzsky's, Inc.)*, 351 B.R. 430, 434 (Bankr. W.D. Tex. 2006). "The court's decision to abstain or not will only be disturbed upon a showing

13

of an abuse of discretion." *Id*. (citing *Howe v. Vaughan (In re Howe)*, 913 F.2d 1138, 1143 (5th Cir. 1990)).

After considering that non-exclusive list of factors, the Court finds no cause to abstain from hearing and deciding the LDEQ Action or to equitably remand the case to state court. The claims and cross-claims asserted in the LDEQ Action are "core proceedings" that this Court has authority to hear and determine on a final basis and the relevant parties have consented to this Court's jurisdiction to hear and decide the "non-core" counterclaims on a final basis. The resolution of all of those claims together is paramount to the efficient administration of the debtors' estates—indeed, the claims in the LDEQ Action and the proofs of claim filed in the debtors' cases are identical and represent the sole disputed issue in the bankruptcy cases. The applicable law is not difficult, novel, or unsettled and the case is far from being trial-ready in the state court, especially now with the recent addition of the Alter-Ego Defendants to the dispute. No undue burden to this Court's docket will result from retaining jurisdiction over the LDEQ Action and no suggestion of prejudice to any party has been presented to the Court.

Accordingly,

**IT IS ORDERED** that the Motion To Remand is **DENIED**.

**IT IS FURTHER ORDERED** that the Motion To Strike is **DENIED AS MOOT**.[4]

New Orleans, Louisiana, this 13th day of September, 2024.

_____
MEREDITH S. GRABILL
UNITED STATES BANKRUPTCY JUDGE

---

[4] The Court observes that the automatic stay imposed as a matter of law by 11 U.S.C. § 362(a) is only applicable to debtors in bankruptcy and may be modified or terminated by court order under the provisions of 11 U.S.C. § 362(d). The automatic stay is a "self-executing injunction," that is, it operates whether or not a party has notice of its existence. *See Campbell v. Countrywide Home Loans, Inc.*, 545 F.3d 348, 355 (5th Cir. 2008). It follows that any "notice" filed by a party has no impact on whether the automatic stay is in effect.

After notice and hearing, and under certain circumstances, a bankruptcy court may issue a preliminary injunction that operates to stay actions against nondebtors. *See, e.g.*, *In re Parlement Techs., Inc.*, No. 24-10755, 2024 WL 3417084, at *1 (Bankr. D. Del. July 15, 2024); *Feld v. Zale Corp. (In re Zale Corp.)*, 62 F.3d 746, 761 (5th Cir. 1995) (acknowledging the propriety of extending § 105(a) temporary injunctions to nondebtors "1) when the nondebtor and the debtor enjoy such an identity of interests that the suit against the nondebtor is essentially a suit against the debtor, and 2) when the third-party action will have an adverse impact on the debtor's ability to accomplish reorganization").