**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 20-11646 |
| | § | |
| TIDEWATER LANDFILL LLC, | § | CHAPTER 7 |
| | § | |
| DEBTOR. | § | SECTION A |
| | § | |
| IN RE: | § | CASE NO. 20-11648 |
| | § | |
| ENVIRONMENTAL OPERATORS, LLC, | § | CHAPTER 7 |
| | § | |
| DEBTOR. | § | SECTION A |
| | § | |
| LOUISIANA DEPARTMENT OF ENVIRONMENTAL QUALITY, | § § § | |
| PLAINTIFF, | § | |
| VERSUS | § § | |
| TIDEWATER LANDFILL LLC, ENVIRONMENTAL OPERATORS LLC, THE LOUISIANA FRUIT COMPANY, USI GULF COAST INC., THE GRAY INSURANCE COMPANY, AIG INSURANCE COMPANY/AMERICAN INTERNATIONAL SPECIALTY LINES INSURANCE COMPANY, IRONSHORE SPECIALTY INSURANCE COMPANY, ASPEN SPECIALTY INSURANCE COMPANY, LANDMARK AMERICAN INSURANCE COMPANY, PAUL GUIDRY, KEVIN GUIDRY, INDUSTRIAL MANAGEMENT GROUP LLC, AGPG LLC, WASTE DISPOSAL SERVICES OF SOUTH LOUISIANA LLC, GULF COAST WATER & BEVERAGE LLC, INDUSTRIAL SERVICES GROUP LLC, PERSONAL PROVIDERS LLC, DIESEL MAINTENANCE LLC, PINTAIL EQUIPMENT RENTAL LLC, JJJ INSURANCE COMPANY, AND KKK INSURANCE COMPANY, | § § § § § § § § § § § § § § § § § § § § § § | ADV. NO. 24-1011 |
| DEFENDANTS. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is a joint motion (the "Motion") filed by the chapter 7 Trustees on behalf of the debtors in the two above-captioned chapter 7 cases and the Louisiana Department of Environmental Quality ("LDEQ") that seeks an Order of this Court granting derivative standing to LDEQ to pursue estate claims against Paul Guidry, Kevin Guidry, Industrial Management Group LLC, AGPG LLC, Waste Disposal Services of South Louisiana LLC, Gulf Coast Water & Beverage LLC, Industrial Services Group LLC, Personnel Providers LLC, Diesel Maintenance LLC, Pintail Equipment Rental LLC (collectively, the "Guidry Defendants"). [No. 20-11646, ECF Doc. 129; No. 20-11648, ECF Doc. 124]. The Guidry Defendants and the Office of the United States Trustee ("UST") oppose the Motion. [No. 20-11646, ECF Docs. 132 & 133; No. 20-11648, ECF Docs. 144 & 145]. The parties submitted supplemental briefs in support of and in opposition to the Motion. [No. 20-11646, ECF Docs. 134, 138 & 139; No. 20-11648, ECF Docs. 148, 154 & 155].

Also before the Court is the Guidry Defendants' motion to dismiss the above-captioned adversary proceeding for failure to state a claim (*e.g.*, lack of derivative standing) (the "Motion To Dismiss"). [Adv. No. 24-1011, ECF Docs. 79 & 105]. Tidewater Landfill LLC ("Tidewater") and Environmental Operators LLC ("Envtl. Operators") (post-petition, the "Debtors"), and LDEQ all oppose the Motion To Dismiss. [Adv. No. 24-1011, ECF Docs. 102 & 103].

For the reasons stated herein, the Court GRANTS the Motion and DENIES the Guidry Defendants' Motion To Dismiss.

**JURISDICTION AND VENUE**

Bankruptcy jurisdiction exists over the above-captioned main cases and the adversary proceeding pursuant to 28 U.S.C. § 1334(b). This Court has jurisdiction to render a final judgment on the Motion and the Motion To Dismiss pursuant to 28 U.S.C. § 157(b)(2)(A) & (O). The venue of the Debtors' bankruptcy cases is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

**BACKGROUND**

On October 12, 2018, LDEQ filed a *Petition on Mandatory Injunction To Abate a Continuing Nuisance* (the "LDEQ Action") in Louisiana state court against Tidewater, Envtl. Operators, The Louisiana Fruit Company ("Louisiana Fruit"), and others, including certain insurers. [Adv. No. 24-1011, ECF Doc. 2]. LDEQ's Petition alleges claims for mismanagement and disregard for applicable environmental statutes, regulations, and permits, and seeks to close properly, pursuant to Louisiana's permit requirements and solid waste laws and regulations, a landfill operated by Tidewater and Envtl. Operators on property owned by Louisiana Fruit. *See id*. LDEQ amended its original Petition on May 2, 2019, to include further allegations in support of an injunction. *See id*.[1] On August 9, 2019, LDEQ amended its Petition a second time to add Aspen Specialty Insurance Company as a defendant. *See id*. In October 2019, LDEQ amended its petition a third time to add Landmark American Insurance Company as a defendant. *See id*.

On September 22, 2020, Tidewater and Envtl. Operators filed petitions for bankruptcy relief under chapter 7 of the Bankruptcy Code. [No. 20-11646, ECF Doc. 1; No. 20-11648, ECF Doc. 1]. Pursuant to 11 U.S.C. § 362(a), those bankruptcy filings stayed the LDEQ Action against those defendants. On or about October 27, 2020, the Trustees appointed in each of those cases filed notices declaring that no assets were available for distribution to creditors. In

---

[1] In May 2019, Louisiana Fruit filed an Answer to the amended Original Petition, asserting a reconventional demand against LDEQ and cross-claims against Tidewater and Envtl. Operators. [No. 20-11646, ECF Doc. 35-2; No. 20-11648, ECF Doc. 28-2].

December 2020, Louisiana Fruit and LDEQ filed motions for relief from the automatic stay imposed by § 362(a) to allow the LDEQ Action to proceed against Tidewater and Envtl. Operators along with the other non-debtor defendants. [No. 20-11646, ECF Docs. 35 & 39; No. 20-11648, ECF Docs. 28 & 32]. The Court granted those motions in January 2021 in large part because the Trustees had declared that the estates contained no assets to liquidate for distribution to creditors and thus, no prejudice to creditors would result if the litigation were allowed to proceed. [No. 20-11646, ECF Docs. 43 & 44; No. 20-11648, ECF Docs. 36 & 37].

In January 2022, however, the Trustees filed notices to creditors, indicating that the Tidewater and Envtl. Operators estates did in fact hold assets in the form of insurance policies (and potential proceeds) and instructed creditors to file proofs of claim. [No. 20-11646, ECF Doc. 59; No. 20-11648, ECF Doc. 50]. LDEQ and Louisiana Fruit filed proofs of claim in both cases, asserting multimillion-dollar claims against the Debtors, citing the same bases as alleged in the LDEQ Action. [No. 20-11646, Claims 1 & 2; No. 20-11648, Claims 2 & 3].

On September 19, 2023, the Louisiana state court granted leave to LDEQ to amend its Petition a fourth time (the "Fourth Amended Petition"). The Fourth Amended Petition added the Guidry Defendants, asserting state-law single-business-enterprise and alter-ego claims. [Adv. No. 24-1011, ECF Doc. 2]. The Guidry Defendants removed the LDEQ Action to the United States District Court for the Eastern District of Louisiana, which referred the case to this Court for all purposes, with instructions to hear and decide then-pending motions. [Adv. No. 24-1011, ECF Doc. 1].[2]

On November 8, 2024, the Guidry Defendants filed the Motion To Dismiss, asserting that the claims LDEQ asserts against them in the Fourth Amended Petition belong to the Debtors'

---

[2] On September 13, 2024, this Court issued a *Memorandum Opinion and Order Denying Motion To Remand and Denying Motion To Strike*. [Adv. No. 24-101, ECF Doc. 36].

4

estates and thus LDEQ lacks derivative standing to assert the claims. On December 11, 2024, LDEQ and the Trustees filed the joint Motion, asking this Court to grant derivative standing to LDEQ to pursue state-law single-business-enterprise and alter-ego claims against the Guidry Defendants on behalf of the estates.

On December 18, 2024, Louisiana Fruit filed a motion for summary judgment, asking this Court to enforce an indemnity it claims it is owed by Tidewater and Envtl. Operators. [Adv. No. 24-1011, ECF Doc. 93 & 119]. Several insurers, LDEQ, and the Debtors opposed that motion. [Adv. No. 24-1011, ECF Docs. 111–113]. On March 13, 2025, this Court issued an Order denying Louisiana Fruit's motion as premature. [Adv. No. 24-1011, ECF Doc. 126]. That Order is currently pending on appeal.

On March 14, 2025, LDEQ amended its Petition to clarify the claims asserted against the Guidry Defendants under Louisiana's environmental protection laws. [Adv. No. 24-1011, ECF Doc. 129].

## DISCUSSION

No party contests that the state-law single-business-enterprise and alter-ego claims asserted by the LDEQ in its Fourth Amended Complaint are estate causes of action. "If a cause of action belongs to the estate, then the trustee has exclusive standing to assert the claim." *Schertz-Cibolo-Universal City, Indep. Sch. Distr. v. Wright (In re Educators Grp. Health Tr.)*, 25 F.3d 1281, 1284 (5th Cir. 1994) (citing *S.I. Acquisition, Inc. v. Eastway Delivery Serv., Inc. (In re S.I. Acquisition, Inc.)*, 817 F.2d 1142, 1153–54 (5th Cir. 1987)). "There is no explicit authority in the Bankruptcy Code that allows a bankruptcy court to grant an individual creditor or a creditors' committee standing to initiate adversary proceedings in the name of the debtor or trustee"; however, "[t]he Fifth Circuit Court of Appeals and a majority of other Circuit Courts

5

have held that such statutory authority nonetheless is implied." *In re On-Site Fuel Serv., Inc.*, No. 18-04196, 2020 WL 3703004, at *9 (Bankr. S.D. Miss. May 8, 2020) (citing *La. World Exposition v. Fed. Ins. Co.*, 858 F.2d 233 (5th Cir. 1988) and other Circuit cases). To obtain a grant of derivative standing from this Court to assert those estate claims against the Guidry Defendants, the Fifth Circuit generally requires that the "claim[s] be colorable, that the [debtor or trustee] ha[s] refused unjustifiably to pursue the claim[s], and that [the creditor] first receive leave to sue from the bankruptcy court." *La. World Exposition* v. *Fed. Ins. Co.*, 832 F.2d 1391, 1397 (5th Cir. 1987). Let us unpack those "requirements" here in the context of this chapter 7 case, particularly in light of the Fifth Circuit's acknowledgement that they "are relevant considerations, though not necessarily a formalistic checklist." *Id*.

### A.     The Trustees' Unequivocal Consent to LDEQ's Derivative Standing Drives the Need for an Adjusted Standard for Granting Derivative Standing.

In filing the Motion jointly with LDEQ, the Trustee unequivocally consents to LDEQ's derivative standing to assert the state law single-business-enterprise and alter-ego claims against the Guidry Defendants.

Although perhaps a matter of first impression in this Circuit, at least two other Circuits have modified the standard for granting derivative standing to a creditor or creditors' committee when the trustee or debtor-in-possession consents. *See PW Enters., Inc. v. N.D. Racing Comm'n (In re Racing Servs., Inc.)*, 540 F.3d 892, 901–03 (8th Cir. 2008); *Commodore Int'l Ltd. v. Gould (In re Commodore Int'l Ltd.)*, 262 F.3d 96, 99–100 (2d Cir. 2001). "In consent to derivative standing cases, according to the Eighth Circuit, the question of whether the trustee has unjustifiably refused to initiate suit is replaced by the question whether the claims are 'colorable.'" *In re On-Site Fuel Serv., Inc.*, 2020 WL 3703004, at *10. The reason being:

6

> The [trustee or] debtor in possession has an obligation to pursue all actions that are in the best interests of creditors and the estate. An unsecured [creditor or] creditors' committee has a close identity with the [trustee or] debtor in possession in this regard. Allowing the [trustee or] debtor in possession to coordinate litigation responsibilities with an unsecured [creditor or] creditors' committee can be an effective method for the [trustee or] debtor in possession to manage the estate and fulfill its duties . . . . Rather than a flat prohibition, impartial judicial balancing of the benefits of a [creditor's or] committee's representation better serves the bankruptcy estate.

*In re Racing Servs., Inc.*, 540 F.3d at 901–02 (quoting *In re Commodore Int'l Ltd.*, 262 F.3d at 99). It follows then that the standard for establishing derivative standing when the trustee or debtor-in-possession consents should be tied to a bankruptcy court's finding that pursuit of the claims is in the best interest of the estate and is necessary and beneficial to the fair and efficient resolution of the bankruptcy proceedings. *See In re Racing Servs., Inc.*, 540 F.3d at 902; *In re Commodore Int'l Ltd.*, 262 F.3d at 100. After all, "[i]f the claims are not 'colorable' because they lack merit, then allowing an individual creditor or a creditors' committee to pursue them would not be in the best interests of the bankruptcy estate or necessary and beneficial to the fair and efficient resolution of the bankruptcy proceedings." *In re On-Site Fuel Serv., Inc.*, 2020 WL 3703004, at *10.[3] To be clear: "[B]ankruptcy courts must not lose sight of the fact that a creditor *must* show that its proposed 'consensual' derivative action is *both 'necessary and beneficial* to the fair and efficient resolution of [the bankruptcy proceedings].'" *In re Racing Servs., Inc.*, 540 F.3d at 902. That is, "not every 'beneficial' action is 'necessary' for a given proceeding." *Id*. Thus, "a trustee's consent is necessary, but not sufficient condition for granting a creditor derivative standing in this context." *Id*. at 903.

---

[3] This Court also agrees with the Second and Eighth Circuits and observes that the standard for granting derivative standing in consent cases should not differ between chapter 7 and chapter 11 cases. *See In re Racing Servs., Inc.*, 540 F.3d at 902 n.10.

7

B.  **LDEQ Has Alleged Colorable Claims and the LDEQ's Prosecution of Those Claims Is Both In the Best Interests of the Estate As Well As Necessary and Beneficial to the Fair and Efficient Resolution of These Bankruptcy Proceedings.**

The Court finds that the state-law single-business-enterprise and alter-ego claims asserted by the LDEQ in its Fourth Amended Complaint are colorable. "Colorable" claims are those "that on appropriate proof would support a recovery." *G-I Holdings, Inc. v. Those Parties Listed on Exhibit A (In re G-I Holdings, Inc.)*, 313 B.R. 612, 631 (Bankr. D.N.J. 2004); *see also Unsecured Creditors Comm. of Debtor STN Enters. Inc. v. Noyes (In re STN Enters.)*, 779 F.2d 901, 905 (2d Cir. 1985). But because LDEQ is not required to present its proof at this stage, "the first inquiry is much the same as that undertaken when a defendant moves to dismiss a complaint for failure to state a claim." *In re G-I Holdings, Inc.*, 313 B.R. at 631 (internal quotations and citations omitted); *see also In re Sabine Oil & Gas Corp.*, 547 B.R. 503, 515 (Bankr. S.D.N.Y. 2016) (citations omitted); *In re Murray Metallurgical Coal Holdings, LLC*, 614 B.R. 819, 826 (Bankr. S.D. Ohio 2020); *In re On-Site Fuel Serv., Inc.*, 2020 WL 3703004, at *12. To analyze a motion to dismiss for failure to state a claim, "a court must accept as true all of the allegations contained in a complaint," but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

To survive a motion to dismiss, the movant must "state a claim [for] relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Determining plausibility is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'— 'that the pleader is entitled to relief.'" *Id.* (quoting FED. R. CIV. P. 8(a)(2)). "While the Court

8

need not 'conduct a minitrial' of the claims . . . the Court may weigh the 'probability of success and financial recovery,' as well as the anticipated costs of litigation, as part of a cost-benefit analysis conducted to determine whether pursuit of the colorable claims are likely to benefit the estate." *In re iPCS, Inc.*, 297 B.R. 283, 291 (Bankr. N.D. Ga. 2003) (quoting *America's Hobby Ctr., Inc. v. Hudson United Bank (In re America's Hobby Ctr., Inc.)*, 223 B.R. 275, 282 (Bankr. S.D.N.Y. 1998)).

LDEQ alleges in its Petition in pertinent part:

> This suit is brought specifically under the Louisiana Solid Waste Management and recover Act, La. R.S. 30:2152 et seq., and its associated regulations under LAC 33:VII.101 et seq. to secure a mandatory injunction to abate the continuing public nuisance created by the presence of the aforementioned, unpermitted, abandoned facility. This suit is also brought under Civil Code Article 667 to abate the continuing public nuisance that is damaging public lands and water ways through the migration of leachate from the unclosed facility.
>
> . . . .
>
> Since specific performance has proven unlikely (although LDEQ would consider a proper plan for specific performance), LDEQ seeks the full cost of proper closure of the Landfill from the defendants so that LDEQ can properly close the facility. In so far as all the named defendants are equally obligated to fully abate this continuing public nuisance, defendants owe the same obligation to the same obligee/creditor, and therefore, are all bound in solido pursuant to Civil Code Article 1794.
>
> . . . .
>
> Based on the paltry discovery received thus far, and the filings with the Louisiana Secretary of State, and the administrative filings on record with LDEQ, Kevin Guidry and Paul Guidry ("The Guidrys") are both the owners and the managers of [Tidewater and Envtl. Operators]. Additionally, the Guidrys are the owners and managers of the Industrial Management Group, LLC; AGPG, LLC, Waste Disposal Services of South West Louisiana, LLC; Gulf Costs Water and Beverage, LLC; Industrial Services Group, LLC; Personnel Providers, LLC; and Pintail Equipment Rental, LLC and Diesel Maintenance, LLC.
>
> LDEQ has analyzed the information in its possession concerning the Guidrys and their landfill related activities. This information includes, but is not limited to, the Secretary of State's record of owned entities and other business

> filings by the Guidrys. The analysis took cognizance of the nature of these entities and the fact that they are all owned and managed by the Guidrys themselves. Analyzing these facts in light of the disclosures made in the Requests for Admissions and other Discovery received from [Tidewater], it is reasonably concluded that all, or at least most, of these business entities were involved in the operation of the Landfill. According to Discovery received, [Tidewater] had no bank account, and no employees, yet it was permitted to operate the facility for over a decade. Kevin Guidry is an accountant and "sophisticated" actor in this enterprise. Since the Facility remained in operation for such a long time, it is reasonably concluded that it was either a successful business, generating profits, or a strategic loss generator for tax avoiding purposes for a larger network of enterprises. All of the names business entities are LLCs, so their losses and gains could theoretically be treated as personal income for the Guidrys. It is believed that the equipment and employees used to operate the facility came from [Envtl. Operators] (who has refused to answer discovery thus far). Based on filings gleaned from Kevin Guidry's unrelated divorce action, and the assumed nature of the entities themselves, it is concluded that some of the personnel and equipment used by [Envtl. Operators] were at least in part, received from the other business entities in the network. For instance, LDEQ believes that Personnel Providers, LLC more likely than not is the source of the employees who worked at the facility. LDEQ has concluded that Diesel Maintenance, LLC probably provided repair services and upkeep to the trucks and heavy equipment necessary to run the Facility. As a final example it is reasonably assumed that Industrial Management Group, LLC, Industrial Services Group, LLC, and Pintail Equipment Rental, LLC were involved in the actual workings of the Facility.
>
> When the totality of the circumstances are taken into account, it is exceedingly reasonable to conclude that this array of LLCs were run as a single business enterprise. It is known that their management is the same. It is suspected and reasonably believed that interlocking, mutual contractual arrangements between the business entities (even if, and especially if informal) provided for the free flow of services and capital between them. It is believed their profits and losses are more likely than not interconnected and share, even if the *nexus* of sharing is only the level of the Guidry's personal tax planning and returns. For this reason, LDEQ has concluded that the whole network is but an *alter ego* of the Guidrys themselves.

[Adv. No. 24-1011, ECF Doc. 129, ¶¶ 6, 8, 10–12]. Taking those allegations as true, the Court finds that LDEQ has stated colorable state-law single-business-enterprise and/or alter-ego claims against the Guidry Defendants. *See Aker Solutions, Inc. v. Shamrock Energy Solutions, LLC,* No. 16-2560, 2019 WL 4981912, at *17–20 (E.D. La. Oct. 8, 2019) (listing elements required to state a claim under single-business-enterprise and alter-ego theories); *Arrowhead Capital Fin.,*

10

*Ltd. v. Royal Alice Props., LLC (In re Royal Alice Props., LLC)*, 619 B.R. 839, 855–61 (Bankr. E.D. La. 2020) (same).

The Court also finds that LDEQ's prosecution of the claims is in the best interests of the estates as well as necessary and beneficial to the fair and efficient resolution of the bankruptcy proceedings. In their papers and at oral argument, the Trustees cited the fact that the estate currently lacks funding to pursue those estate claims and that LDEQ's "prosecution of the AlterEgo/SBE Claims serves to increase the recovery of funds for the mutual benefit of the Estates at no cost." Motion, ¶ 13.[4] The Court finds that LDEQ is not the sole creditor in these bankruptcy cases. Insiders of the Debtors, as well as at least one non-insider creditor have filed proofs of claim, but looming large in both cases is Louisiana Fruit, which has asserted multi-million dollar indemnity claims against both Debtors. Moreover, all parties with a stake in the outcome of this dispute, including insurers, are at the table in the LDEQ Action.

Of serious concern to the Court are LDEQ's allegations in its Petition and in open court that, if true, implicates others' complicity and liability with the Debtors in causing and failing to remediate significant environmental harm. Allowing LDEQ, an entity charged with enforcing environmental statutes intended to protect the public from the effects of hazardous waste and pollution, to prosecute and liquidate these its claims along side the estates' claims is not only necessary and beneficial to the fair and efficient resolution of the bankruptcy proceedings and in the best interests of the estates, but is also in the best interests of the public and public policy.

---

[4] As highlighted by the UST, § 704(a)(1) of the Bankruptcy Code requires the Trustees to "collect and reduce to money the property of the estate for which such trustee serves," and any fees earned by the Trustee under § 326 of the Bankruptcy Code are tied to distribution of property of the estate. [No. 20-11646, ECF Doc. 132, ¶¶ 18–19]. The Trustees have withdrawn any request for fees other than those allowed pursuant to § 326; the Court will consider any motion to allow administrative expenses when filed.

11

### C. The Court Grants LDEQ Derivative Standing Retroactive to the Filing Date of the Fourth Amended Petition

It is true that LDEQ filed its Fourth Amended Petition asserting state-law single-business-enterprise and/or alter-ego claims against the Guidry Defendants before seeking permission from this Court to do so. But no *per se* rule exists to bar a creditor from filing a petition or complaint asserting estate claims without first obtaining permission from the bankruptcy court. *See La. World Exposition v. Fed. Ins. Co.*, 832 F.2d 1391, 1398 (5th Cir. 1987); *In re Racing Servs., Inc.*, 540 F.3d 892, 903–04 (8th Cir. 2008). Such an automatic bar serves to waste time and resources only to wind up in the same procedural posture and "confuses the effect of filing a suit with the effect of its prosecution—only the latter threatens the efficient administration of the bankruptcy estate." *In re Racing Servs., Inc.*, 540 F.3d at 903–04. "Because a creditor may not prosecute a derivative suit without the bankruptcy court's permission, the filing of an adversary complaint in itself does not affect the estate's administration." *Id.* at 904. Indeed, it is not unusual for bankruptcy courts to grant derivative standing retroactively when other standards for granting the request are met. *See, e.g.*, *Liberty Mut. Ins. Co. v. Official Unsecured Creditors' Comm. of Spaulding Composites Co. (In re Spaulding Composites Co.)*, 207 B.R. 899, 904–05 (B.A.P. 9th Cir. 1997); *Official Comm. of Unsecured Creditors of Nat'l Forge Co.. v. Clark (In re Nat'l Forge Co.)*, 326 B.R. 532, 545–46 (W.D. Pa. 2005) (citing cases); *Claridge Assocs., LLC v. Schepis (In re Pursuit Capital Mgmt., LLC)*, 595 B.R. 631, 664 n.146 (Bankr. D. Del. 2018) (citing cases); *Official Comm. of Unsecured Creditors v. NewKey Grp., LLC (In re SGK Ventures, LLC)*, 521 B.R. 842, 852–53 (Bankr. N.D. Ill. 2014).

For the reasons stated above, *see supra* Subpart B, the Court finds good cause to grant LDEQ's derivative standing request. Although the better practice would have seen LDEQ and

the Trustees securing Court approval before filing the Fourth Amended Petition, the Court finds good cause now to make its grant of derivative standing retroactive to the filing date of the Fourth Amended Petition.

Accordingly,

**IT IS ORDERED** that the Motion is **GRANTED**.

**IT IS FURTHER ORDERED** that the Motion To Dismiss is **DENIED**.

New Orleans, Louisiana, July 16, 2025.

_____
MEREDITH S. GRABILL
UNITED STATES BANKRUPTCY JUDGE